UNITED STATES of America, Appellant,

v.

Richard Craig SMITH, Appellee.

No. 84–5240.

United States Court of Appeals, Fourth Circuit.

Argued June 3, 1985.

Decided Dec. 4, 1985.

Samuel Rosenthal, Crim. Div., Dept. of Justice, Washington, D.C. (Elsie L. Munsell, U.S. Atty., Alexandria, Va., Roberta Elkins, Dept. of Justice, Washington, D.C., Joseph J. Aronica, Asst. U.S. Atty., Alexandria, Va., on brief), for appellant.

David T. Williams, William B. Cummings, Alexandria, Va., Brent Carruth, Carruth and Goodwin, Van Nuys, Cal., on brief, for appellee.

Before WINTER, Chief Judge, RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, ERVIN, CHAPMAN, WILKINSON, and SNEEDEN, Circuit Judges and BUTZNER, Senior Circuit Judge, sitting en banc.

WIDENER, Circuit Judge:

Richard Craig Smith has been indicted on five counts of espionage under 18 U.S.C. §§ 793(a), 794(a) and (c). Prior to trial, Smith gave notice to the government and to the court pursuant to 18 U.S.C.App. § 5 that he intended to disclose classified information as part of his defense. Following the procedures set out in the Classified Information Procedures Act, 18 U.S.C.App. § 1, et seq. (CIPA), the district court conducted a closed hearing to determine the use, relevance, or admissibility of the classified information the defendant proffered. 18 U.S.C.App. § 6(a). At the conclusion of the hearing, the court ruled that part of the classified information Smith sought to introduce would be admissible at trial. *United States v. Smith*, 592 F.Supp.

424 (E.D.Va.1984). The government invoked CIPA's provision allowing interlocutory appeals and sought a reversal of the district court's ruling allowing introduction of the classified information. 18 U.S.C. App. § 7. A panel of this court upheld the district court's finding that the classified information in question could be introduced at trial. *United States v. Smith*, 750 F.2d 1215 (4th Cir.1984). We vacated the panel decision and granted en banc review. We conclude that the district court applied an incorrect legal standard in ruling upon the introduction of the classified information, and accordingly vacate the order of the district court and remand.

Smith was employed by the Army Intelligence Security Command (INSCOM) between 1973 and 1980. He is here charged with unlawfully selling in 1982 and 1983 certain classified information to Victor I. Okunev, an agent of the Soviet Union. The indictment charges that Smith met with Okunev at the Soviet Commercial Compound in Tokyo, Japan, twice in November 1982 and once in February 1983. Smith allegedly gave Okunev classified information regarding five INSCOM double agent operations, for which he received $11,000 from Okunev.[1]

In his defense, on account of the facts he relates just below, Smith argues that he believed he was working for the Central Intelligence Agency (CIA) when he turned over the information to Okunev. He claims that he was sought out by two men who claimed to be CIA agents, Ken White and Danny Ishida. White and Ishida sought Smith's help in setting up a double agent project directed toward the Russians in Japan. Smith was to gain the confidence of the Soviets by supplying them with the details of eight INSCOM double agent operations. White and Ishida told Smith that this information would be of no real value to the Russians because those eight operations had been discontinued. Smith became convinced that White and Ishida were indeed working for the CIA and agreed to help them by supplying the specified information to the Russians.

Smith seeks to introduce at trial several pieces of classified information to support his defense that he thought he was working for the CIA when he sold the information to the Russians. Such proof may negate an essential element of the crimes charged, intent or reason to believe the information sold would be used to injure the United States or to the advantage of a foreign country.[2] After a lengthy hearing, the district court ruled that Smith could introduce part of the classified information he relied upon in his defense.[3] It found that certain classified information was relevant to Smith's defense under the principles of Fed.R.Evid. 401[4] and therefore was admissible at trial. For example, in a ruling not appealed from, the court found that details of the INSCOM operations White and Ishida allegedly gave to Smith to pass on to the Soviets were admissible because such information made the existence of White and Ishida more probable than otherwise would be the case. *Smith, supra,* 592 F.Supp. at 445.

The district court further found that CIPA was not intended to change the existing law of evidence regarding admissibility; and Congress did not intend to allow exclusion of evidence relevant to the defense simply because that evidence was classi-

---

**1.** Because of the sensitive nature of some of the facts in this case, we have based our published factual discussion on the district court's published opinion.

**2.** Both 18 U.S.C. §§ 793 and 794 are crimes requiring proof of an intent or reason to believe that the information is to be used to the injury of the United States or to the advantage of a foreign country. See *Gorin v. United States,* 312 U.S. 19, 61 S.Ct. 429, 85 L.Ed. 488 (1941) (construing a predecessor statute).

**3.** Many of the district court's rulings are not challenged on appeal. The government only contests the introduction of two categories of classified information.

**4.** Rule 401: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

fied. Because the evidence proffered was found to be relevant, it reasoned, it could be introduced at trial.

A panel of this court affirmed the district court's finding that the evidence in question was admissible. It concluded that the district court correctly applied the standards for judging relevance under Fed.R. Evid. 401 and 403.[5] It rejected the government's argument that governmental privilege required that a balancing test similar to the one set out in *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), should be applied here. The *Roviaro* standard as we view it is one that calls for balancing the public interest in protecting the information against the individual's right to prepare his defense. See *Roviaro*, p. 62, 77 S.Ct. p. 628. Its application results in a more strict rule of admissibility, and we think that standard should have been applied here.

In order to properly understand the troubling issue before us, we should review CIPA and the legislative history surrounding it. CIPA was enacted by Congress in an effort to combat the growing problem of graymail,[6] a practice whereby a criminal defendant threatens to reveal classified information during the course of his trial in the hope of forcing the government to drop the criminal charge against him. Senate Rep. 96–823, 96th Cong., 2d Sess. 1–4 (1980), reprinted in 1980 U.S.Code Cong. & Adm.News 4294–4298. Prior to the enactment of CIPA, the government had no method of evaluating such disclosure claims before trial actually began. Oftentimes it would abandon prosecution rather than risk possible disclosure of classified information.

CIPA established a pretrial procedure for ruling upon the admissibility of classified information.[7] A criminal defendant must notify the United States and the court if he reasonably expects to disclose classified information during his trial or during any pretrial proceeding. A defendant is forbidden from disclosing any such information absent the giving of notice. 18 U.S.C.App. § 5. The notice must specifically set out the classified information the defendant believes he will rely upon in his defense. A general statement of the areas the evidence will cover is insufficient. *United States v. Collins*, 720 F.2d 1195, 1199 (11th Cir. 1983).

Once the defendant gives notice of his intention to introduce classified information, the United States may request a hearing at which the court shall determine the "use, relevance, or admissibility of classified information that would otherwise be made during the trial or pretrial proceeding." 18 U.S.C.App. § 6. Upon a determination by the court that the classified information is admissible, the United States may move to substitute either a statement admitting relevant facts that the classified information would tend to prove or a summary of the classified information instead of the classified information itself. 18 U.S. C.App. § 6(c)(1). The court shall grant the government's motion if the substitution will give the defendant substantially the same ability to make his defense as would the disclosure of the classified information. If the court denies a motion for a substitution, the Attorney General can submit an affidavit objecting to the disclosure of the classified information at issue. 18 U.S.C. App. § 6(e). Once such an affidavit is filed, the defendant is barred from disclosing the classified information. 18 U.S.C. App. § 6(e). The court then can dismiss certain counts of the indictment, find against the United States on issues relating to the classified information, strike testimo-

---

**5.** Rule 403: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

**6.** (Parts of this footnote are classified)

**7.** The Act also provides a procedure by which the court can delete portions of classified documents to be discovered by a defendant. Substitutions are also permitted under certain circumstances. 18 U.S.C.App. § 4. No issues are raised here regarding Smith's discovery rights.

ny, or as a last resort dismiss the indictment. 18 U.S.C.App. § 6(e). The United States can take an interlocutory appeal from an adverse district court decision with respect to the disclosure of classified information. 18 U.S.C.App. § 7.

This appeal concerns the construction and meaning of § 6 of CIPA as it sets out the district court's role in deciding the use, relevance or admissibility of classified information as evidence. The legislative history is clear that Congress did not intend to alter the existing law governing the admissibility of evidence. Thus, the Conference Report provided "... the conferees agree that, as noted in the report to accompany S.1482 and H.R. 4736, nothing in the conference substitute is intended to change the existing standards for determining relevance and admissibility." House Conference Report No. 96–1436, 96th Cong.2d Sess. (1980), p. 12, reprinted in U.S.Code, Cong. & Adm.News, p. 4307, 4310.[8] The circuits that have considered the matter agree with the legislative history cited that ordinary rules of evidence determine admissibility under CIPA. *United States v. Wilson,* 750 F.2d 7 (2d Cir.1984); *United States v. Wilson,* 732 F.2d 404 (5th Cir. 1984), *cert. den.* —— U.S. ——, 105 S.Ct. 609, 83 L.Ed.2d 718. No new substantive law was created by the enactment of CIPA. *Collins, supra,* 720 F.2d at 1199. Neither did the adoption of the Federal Rules of Evidence change the existing law on the subject where not addressed. *Werner v. Upjohn Co. Inc.,* 628 F.2d 848 (4th Cir. 1980).

■ The district court correctly concluded that CIPA was merely a procedural tool requiring a pretrial court ruling on the admissibility of classified information. The court then looked at the two groups of classified information at a CIPA hearing and concluded that they were relevant to Smith's defense. Under the standards of Fed.R.Evid. 401, we find no error in the district court's conclusion as to some of the classified information it held should be admitted which would make Smith's account of the events more probable than without that evidence and hence relevant.

The relevance of some of the information is apparent when reviewing Smith's defense. He does not deny that he gave the classified information to the Soviets. He defends the charges against him solely on the grounds that he did not have the necessary intent or reason to believe the information would be used to harm the United States or to give advantage to a foreign nation. Instead, he claims that he thought he was aiding the United States by working for the CIA in setting up a double agent operation.[9]

Not all relevant evidence is admissible at trial, however. Fed.R.Evid. 402. The

8. Should it be argued that our decision is contrary to the understanding of the House (see its Permanent Select Committee on Intelligence Report No. 96–831, 96th Cong.2d Sess. (1980), p. 14–15), we think a reading of the House Report in that light reads into the report a necessary inconsistency within the report itself, for the report provided that "the existing standards of use, relevance, and/or admissibility of information or materials in criminal trials not be affected." We think the "higher standard of admissibility" rejected in the House Report mentioned on p. 15, n. 12, may only mean a higher standard of admissibility than that already required by existing law. Our construction of the legislative history is supported by the Conference Report we have mentioned in the text, as well as Senate Report No. 96–823, 96th Cong.2d Sess., p. 8 (1980), reprinted in 1980 U.S.Code Cong. and Adm.News 4294–4301.

Like reasoning applies to the Senate Report. That report provides, p. 8, "... on the question of a standard for admissibility of evidence at trial, the committee intends to retain current law." The Committee's later recital that the court should not balance the national security interest against the right of the defendant to obtain the information is entirely inconsistent with the committee's intent to retain existing law as to admissibility if it is read to forbid all balancing. Thus, we do not read into the Senate Report a necessary inconsistency, and construe it as we do the House Report to mean any balancing not already required by existing law.

The Conference Report notably leaves out all reference to such matters, and states, as we have noted in the text, that the existing standards for determining relevance and admissibility are unchanged. We follow the Conference Report.

9. (Parts of this footnote are classified)

government argues that even if the evidence in question is relevant it should be excluded under a privilege similar to the informer's privilege recognized by *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). We believe that the district court committed an error of law in not applying such a privilege before ruling the relevant classified information admissible. Although evidence may be relevant, it yet may be inadmissible because of common law privileges with respect to the testimony. Fed.R.Evid. 501. Some such common law privileges include the attorney-client privilege, *Chirac v. Reinicker*, 11 Wheat 280, 24 U.S. 280, 6 L.Ed. 474 (1826); marital privilege, *Trammel v. United States*, 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980); military or state secrets, *United States v. Reynolds*, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953); and the informant's privilege, *Roviaro v. United States, supra.*[10]

*Roviaro* recognizes the existence of a qualified privilege to withhold the identity of persons who furnish information regarding criminal activity to law enforcement officials. Such a privilege is designed to protect and foster the interests of law enforcement by encouraging citizens to aid criminal justice without fear of public disclosure.

■■■ The privilege is a qualified one, however. The privilege ceases once the reasons for it cease, that is, once disclosure occurs to "those who would have cause to resent the communication." *Roviaro, supra*, 353 U.S. at 60, 77 S.Ct. at 627. The privilege must also give way when the informant or the contents of his communication "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Roviaro, supra*, 353 U.S. at 60–61, 77 S.Ct. at 628. The trial court is required to balance the

public interest in nondisclosure against the defendant's right to prepare a defense. A decision on disclosure of such information must depend on the "particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro, supra*, 353 U.S. at 62, 77 S.Ct. at 629; quoted with approval in *Rugendorf v. United States*, 376 U.S. 528, 534–35, 84 S.Ct. 825, 829, 11 L.Ed.2d 887 (1964).

The defendant in *Roviaro* was convicted of selling heroin to one John Doe and illegally transporting that heroin. Roviaro moved to learn the identity of John Doe. The motion was denied. At trial, prosecution witnesses described John Doe's part in the drug transaction but he was never produced or identified. The Court vacated the conviction after concluding that John Doe was a material witness to the defendant because of his participation in the crime.[11] Because John Doe was the only other participant in the crimes charged, his testimony was "highly relevant and might have been helpful to the defense." *Roviaro, supra*, 353 U.S. at 63–64, 77 S.Ct. at 629.

■■■ Dual interests arise from nondisclosure of informers and the information they possess. First, the public interest is served by nondisclosure because it encourages persons to come forward with information that can aid effective law enforcement. Second, the safety and security of the person supplying the information is best protected by nondisclosure of his identity to those who may cause him harm. *United States v. Estrella*, 567 F.2d 1151, 1153 (1st Cir.1977). Those interests must be balanced against a defendant's right to present his defense. The privilege must give way to the "fundamental requirements of fairness." *United States v. Pitt*, 382 F.2d 322, 325 (4th Cir.1967), quoting

---

10. Even before *Roviaro* the Court had recognized that "public policy forbids disclosure of an informer's identity unless essential to the defense." *Scher v. United States*, 305 U.S. 251, 254, 59 S.Ct. 174, 176, 83 L.Ed. 151 (1938).

11. The government conceded in *Roviaro* that as to count one of the indictment, selling heroin to John Doe, disclosure was appropriate but not as to count two, transporting the heroin. The Supreme Court found disclosure necessary as to both counts.

*Roviaro, supra,* 353 U.S. at 60, 77 S.Ct. at 627. The defendant must come forward with something more than speculation as to the usefulness of such disclosure. *United States v. Grisham,* 748 F.2d 460 (8th Cir. 1984); *United States v. Pantohan,* 602 F.2d 855, 858 (9th Cir.1979); *United States v. Skeens,* 449 F.2d 1066, 1070 (D.C.Cir. 1971). Disclosure is not required despite the fact that a criminal defendant may have no other means of determining what relevant information the informant possesses. *United States v. Valenzuela-Bernal,* 458 U.S. 858, 870–71, 102 S.Ct. 3440, 3448, 73 L.Ed.2d 1193 (1982). Disclosure is only required after a court has determined that the informer's testimony is highly relevant. *Id.* at 870, 102 S.Ct. at 3448. One of the most important factors to be considered is the materiality of the evidence to the defendant's particular defense. *Grisham, supra,* 748 F.2d at 463; *United States v. Barnes,* 486 F.2d 776, 778 (8th Cir.1973). The decision of whether the testimony of the informer will be relevant and helpful is usually within the trial judge's discretion. *See United States v. Soles,* 482 F.2d 105, 109 (2d Cir.), *cert. den.* 414 U.S. 1027, 94 S.Ct. 455, 38 L.Ed.2d 319 (1973).

 The government's privilege does not give way simply because the defendant knows the informant's name or identity. *See United States v. Hargrove,* 647 F.2d 411, 414 (4th Cir.1981). Protection of the informant can justify nondisclosure of his address or location. *United States v. Aguirre Aguirre,* 716 F.2d 293 (5th Cir. 1983). When the informant's identity is known to the defendant but his location is not, the same balancing of the public interest in nondisclosure against the defendant's need for disclosure must occur. *United States v. Tenorio-Angel,* 756 F.2d 1505 (11th Cir.1985). Defendant must still show that disclosure will significantly aid his defense. *United States v. Diaz,* 655 F.2d 580, 588 (5th Cir.1981), *cert. den.* 455

U.S. 910, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982).

The District of Columbia Circuit followed *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), which followed *Roviaro,* as the basis for concluding that a privilege exists allowing the government to refuse to disclose the location of drug surveillance operations in *United States v. Green,* 670 F.2d 1148, 1154–55 (D.C.Cir. 1981). The interests to be protected by nondisclosure are the same in both instances. Hidden surveillance operations can be useful law enforcement tools only if they remain hidden and secret. The safety of police officers manning such an operation may be endangered by public disclosure. The cooperation of the public in participating in such an operation could be compromised by disclosure. These harms must be balanced against the defendant's need for the information. And in *United States v. Harley,* 682 F.2d 1018 (D.C.Cir.1982), the court extended the privilege to trials.

We find the principles of *Roviaro, Green,* and *Harley* applicable here. The government interest protected by nondisclosure is analogous. The government has a substantial interest in protecting sensitive sources and methods of gathering information. The gathering of such information and the methods used resemble closely the gathering of law enforcement information. The confidentiality of sources and the methods used in both instances are critical. Persons who supply information to the government regarding matters taking place in foreign countries are likely to be located outside the United States. Their safety would immediately be placed in jeopardy if their identity were made public. Revealing such information absent an essential need by a defendant would also result in the drying up of a primary source of information to our intelligence community.[12]

---

12. Much of the Bishop, Baldwin information sought to be disclosed here falls within our interpretation of such a government privilege. Smith seeks to introduce evidence relating to the details of the operation of the Bishop, Bald-

win agency and the CIA's involvement in that operation. Included in this information are other operations of the CIA in the Far East, for example, which would seem to have no relevancy in this case under any standard. As well,

Law enforcement domestic informers generally know who their enemies are; intelligence agents ofttimes do not. To give the domestic informer of the police more protection than the foreign informer of the CIA seems to us to place the security of the nation from foreign danger on a lower plane than the security of the nation from the danger from domestic criminals. In our opinion the national interest is as well served by cooperation with the CIA as with the domestic police.

As the Supreme Court has reasoned, albeit in the context of a civil action,

"The Government has a compelling interest in protecting both the secrecy of information to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service." ... If potentially valuable intelligence sources come to think that the Agency will be unable to maintain the confidentiality of its relationship to them, many could well refuse to supply information to the Agency in the first place.

Even a small chance that some court will order disclosure of a source's identity could well impair intelligence gathering and cause sources to "close up like a clam." To induce some sources to cooperate, the Government must tender as absolute an assurance of confidentiality as it possibly can. "The continued availability of [intelligence] sources depends upon the CIA's ability to guarantee the security of information that might compromise them and even danger [their] personal safety."

*CIA v. Sims,* —— U.S. ——, ——, 105 S.Ct. 1881, 1891, 85 L.Ed.2d 173 (1985), partially quoting from *Snepp v. United States,* 444 U.S. 507, 509 n. 3, 512, 100 S.Ct. 763, 765 n. 3, 766, 62 L.Ed.2d 704 (1980).

■ We find the privilege applicable here even though Smith has had access to the information he seeks to admit at trial. *Roviaro* speaks of protection from "those who would have cause to resent the communication." This is not the typical informant case where the criminal defendant is usually the one that would resent the communications. Here, a significant part of the risk of harm arises from disclosure to the public. The government's interest is still protectable although Smith may have had access to the information. The privilege is not extinguished by previous disclosure to the defendant alone. The government interest to be protected here includes disclosure of the information to the public. We therefore conclude that the privilege did not cease because Smith has had access to the information.

Smith argues that even if the government's *Roviaro* type privilege exists, in the government's exercise of that privilege it must follow the substitution procedure of § 6(c) of CIPA rather than seek exclusion of the evidence altogether. Adoption of Smith's argument would result in a substantive change in the law of evidence, exactly what Congress said CIPA was not designed to do. Had CIPA not been enacted, the government could have raised its privilege at trial. The trial court then should have engaged in the balancing test of *Roviaro*. If it determined that the government's interest was superior, taking all proper factors into account, the evidence would not be disclosed. That is yet the law, but CIPA dictates that such a decision be made prior to trial.

The court decisions construing CIPA are consistent with our holding here. In *United States v. Pringle,* 751 F.2d 419 (1st Cir.1984), the defendants were convicted of possession and conspiracy to possess marijuana with the intent to import after a ship full of marijuana in their charge was seized. The defendants sought to have the government produce information regarding the surveillance, boarding and seizure of their ship. Instead of supplying the information, the government moved for a hearing under CIPA to prevent release of the

when the balance of the details permitted by the district court to be proved are properly balanced against the public interest in nondisclo-

sure, the admissibility of many of them is suspect as we discuss later in this opinion.

material. Following an *in camera ex parte* examination of the material, the district court refused to require the release of the information to the defendants. The court of appeals affirmed after applying *Roviaro*. It agreed with the district court that the information "was not relevant to the determination of the guilt or innocence of the defendants, was not helpful to the defense and was not essential to a fair determination of the cause." *Pringle, supra*, 751 F.2d at 428. The significance of *Pringle*, of course, is that it applied *Roviaro* as the standard in its construction of CIPA.

We find no CIPA case that has involved the issue now before us. We reject Smith's argument that several cases hold that relevancy is the only determination to be made by the trial court. In those cases, the trial court determined that the evidence was not relevant so that it did not need to go further and decide if that relevant evidence was admissible. *United States v. Wilson*, 732 F.2d 404, 412 (5th Cir.1984) (affirming the district court's holding that evidence was irrelevant and immaterial); *United States v. Wilson*, 721 F.2d 967, 975 (4th Cir.1983) (sustaining a holding by the district court that the information was not relevant and material).

Our holding is also supported by the language used by Congress in § 6 of CIPA, requiring the district court to rule upon the use, relevance, or admissibility of classified information. Such language is consistent with existing law. Had Congress wished to allow all relevant classified information to be automatically admissible at trial, it would have so provided. The error of the district court here was in doing just that. It did not go further with its analysis than determine that the evidence was relevant. It should still have determined whether any relevant evidence was admissible in light of the applicable government privilege.

Having held that the district court erred by its failure to consider the government's privilege in arriving at its conclusion that the evidence in question was admissible at trial, we think it is not out of order to call to that court's attention some of the principles the cases have established, although we do not lay down at this time any rigid rule, for *Roviaro* requires that "[w]hether a proper balance renders nondisclosure erroneous must depend upon the particular circumstance of each case, taking into consideration the crime charged, the possible defense, the possible significance of the informer's testimony, and other relevant factors," 353 U.S. p. 62, 77 S.Ct. p. 629. A district court may order disclosure only when the information is at least "essential to the defense," *Scher, supra*, 305 U.S. at 254, 59 S.Ct. at 176: "necessary to his defense," *Rugendorf, supra*, 376 U.S. at 535, 84 S.Ct. at 829, quoted in *Pitt, supra*, 382 F.2d at 325; and *Skeens, supra*, 449 F.2d at 1070; and neither merely cumulative nor corroborative, *Harley, supra*, 682 F.2d at 1021, *Estrella, supra*, 567 F.2d at 1153; nor speculative, *Tenorio-Angel*, 756 F.2d at 1511, *Grisham*, 748 F.2d at 464; *Pantohan*, 602 F.2d at 858; *Estrella*, 567 F.2d at 1153; *Skeens*, 449 F.2d at 1070. We do hold, however, that we equate the disclosure of the classified information sought in this case with the disclosure of the various kinds of information sought about informers in the cases construing *Roviaro*. The *Roviaro* standard of *admissibility* is at the least more restrictive than the ordinary rules of *relevancy* would indicate.

The judgment of the district court is vacated and the case is remanded for reconsideration not inconsistent with this opinion.

VACATED AND REMANDED [13]

---

13. In applying its rule that relevance and admissibility are synonymous, the district court permitted Smith to introduce into evidence broad classes of classified information about Bishop, Baldwin, including evidence that Bishop, Baldwin was used as a CIA cover organization, that subsidiaries of Bishop, Baldwin were established for cover purposes, and that the CIA deposited funds into Bishop, Baldwin's account. It also permitted the defense to show the activities of a CIA agent known as Richard Cavanaugh, including double agent programs in the Far East not related to the current charges. Smith was permitted to show that Cavanaugh

BUTZNER, Senior Circuit Judge, dissenting, with whom WINTER, Chief Judge, PHILLIPS, MURNAGHAN, and ERVIN, Circuit Judges join:

For reasons set forth in the opinion of the panel, *United States v. Smith*, 750 F.2d 1215 (4th Cir.1984), I believe the district court properly interpreted and applied the Classified Information Procedures Act, 18 U.S.C.App. 3, and its order should be affirmed. Two additional comments are prompted by the opinion of the en banc court.

I

Congress was aware of the government's desire to impress on pending legislation the standard of admissibility of classified evidence derived from *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). An assistant attorney general testified:

The "relevant and material" standard we propose for inclusion in S. 1482 is based on the standard adopted by the Supreme Court in *Roviaro v. United States*, 353 U.S. 53, [77 S.Ct. 623, 1 L.Ed.2d 639] (1957) for determining whether the defendant is entitled to obtain and disclose the identity of a government informant in a criminal case. Not-

ing the important "public interest in effective law enforcement" served by the protection of the identity of informants, the Court in *Roviaro* ruled that disclosure of such sensitive information is not required unless the information "is relevant and helpful to the defense of an accused or is essential to a fair determination of a cause." 353 U.S. at 59, 60–61 [77 S.Ct. at 627, 628]. Thus, the Court found in the informant situation that the significant government interest in nondisclosure requires that a more demanding standard than relevance be employed. Certainly a similar standard would be appropriate in cases involving national security matters, for the interest in protecting the confidentiality of classified information is equally, if not more, compelling than that in protecting the identities of law enforcement informants.

Testimony of Feb. 7, 1980, before Subcommittee on Criminal Justice of the Committee on the Judiciary, S. No. 96–57 at 18.

In testimony before a House Subcommittee, the assistant attorney general explicitly characterized the standard derived from *Roviaro* as an "important" difference between the House and the administration bills. Noting that the House bill did not include the *Roviaro* standard of "relevant

engaged in covert activities without prior authorization and that his "free lance style" offended his superiors. Smith was *further permitted to* show that the CIA began to terminate its relationship with Bishop, Baldwin due in part to an IRS investigation.

The broad range of proof the district court would have permitted concerning Bishop, Baldwin is centered around the activities of Cavanaugh. Yet, despite wide discovery permitted the defendant and the defendant's proffer of testimony of numerous witnesses acquainted with the intelligence community and even with Bishop, Baldwin and the United States Far East intelligence operations, Smith has failed to connect Cavanaugh to his double agent operation. In his lengthy proffer of testimony, Smith does not even claim that White and Ishida would testify that they worked for Cavanaugh. Yet he would ask the jury to infer that Cavanaugh directed his double agent operation and that he was left dangling because Cavanaugh was trying to protect himself.

Thus, the inferences Smith would ask the jury to draw are strained and of marginal relevance

at best. Certainly they are no better than speculative and hence do not support the admission of the privileged information. *Tenorio-Angel, supra,* 756 F.2d at 1511; *Grisham, supra,* 748 F.2d at 464; *Pantohan, supra,* 602 F.2d at 858; *Estrella, supra,* 567 F.2d at 1153; *Skeens, supra,* 449 F.2d at 1070.

In its brief in this court, the government states that it has no objection if Smith shows that White and Ishida told him to communicate with them through a telephone number which was in fact a number of Bishop, Baldwin and that calls to that number were transmitted to CIA agents. These facts would seem to be admissible under the balancing test we have outlined in the text of the opinion. They would be essential to the defense, not merely cumulative, corroborative nor speculative. All the balance of the classified information held admissible by the district court under the heading "Bishop, Baldwin Information" we think is inadmissible and that the holding of the district court admitting the same was an abuse of discretion.

and material," he testified at length on the reasons this omission should be rectified. Testimony of Aug. 7, 1979, before Subcommittee on Legislation of the Permanent Select Committee on Intelligence, at 8–11. The government's argument in this appeal is essentially a paraphrase of the assistant attorney general's testimony.

The Congress rejected the assistant attorney general's recommendation. Congressional intent not to incorporate the *Roviaro* standard is manifest from legislative history. The Senate Report states:

> It should be emphasized, however, that the court should not balance the national security interests of the Government against the rights of the defendant to obtain the information. The sanctions against the Government are designed to make the defendant whole again.

S.Rep. No. 823, 96th Cong., 2d Sess. at 9, *reprinted in* 1980 U.S.Cong. and Ad.News 4294, 4303. We cannot accept the notion expressed in note 8 of the majority opinion that this unequivocal statement is inconsistent with congressional intent. It is clear from the text of the Act and its legislative history that the Congress intended the Executive, not the courts, to decide whether to expose relevant classified information subject to sanctions the Act provides. The Act does not incorporate the *Rovario* standard. It omitted the requirement that the evidence be "relevant and material," as urged by the Department of Justice's spokesman. Now the majority opinion embraces what the Congress rejected.

Smith is not seeking disclosure by the government of two items of classified evidence that are the subject of this appeal. He has no need to discover it. He possesses this evidence and seeks to introduce it in his defense. The district court has ruled that it is relevant and admissible.

The text of the statute, its legislative history, and cases interpreting it establish that the Act does not alter existing standards for determining relevance and admissibility of evidence. Existing standards apply *Roviaro* to requests for discovery of information known to the government but unknown to the defendant. Under existing standards which the Congress intended to leave intact, *Roviaro* did not exclude the introduction of relevant evidence known to the defendant. *See* 353 U.S. at 60 n. 8, 77 S.Ct. at 627 n. 8; *United States v. Godkins,* 527 F.2d 1321, 1325–27 (5th Cir.1976). Consequently, the majority is unable to cite a case in which the informer's privilege was successfully invoked to bar a defendant from calling an informant as a witness when his identity and whereabouts were known to the defendant and his testimony was relevant.

If under existing standards *Roviaro* governed admissibility of evidence known to the defendant, there would be little need for the Act. A simple pretrial disclosure rule such as those required for alibi, insanity, or rape would suffice if the government was required to disclose to the court the necessary information to balance intelligently the defendant's needs against the interests of national security. The Act, however, was designed to shield the government from the necessity of explaining to the court at the hearing contemplated by § 6(a) the information that is ordinarily furnished by the government when a *Roviaro* request is denied under existing law.

The application of *Roviaro* to exclude relevant evidence known to the defendant, instead of confining its principles to discovery requests, significantly alters the existing standard for determining the admissibility of evidence in contravention of express congressional intent. This novel alteration of the standard is made at the cost of introducing confusion into a well drafted, straightforward procedure that at once protects national security and affords the defendant a fair trial. Contrary to the provisions of the Act, the court, in a hearing required by Section 6(a), will have to require the government to produce information in support of its claim that the interests of national security outweigh the defendant's need to introduce relevant evidence which he already possesses. Alter-

natively, the court will have to try and balance these interests without the information which *Roviaro* contemplates it should have.

*Roviaro*, of course, is still applicable to discovery requests. This is clearly explained in *United States v. Pringle*, 751 F.2d 419 (1st Cir.1984), on which the majority relies. There the court pointed out that none of the defendants "possessed classified information which they threatened to disclose. Quite to the contrary, they were seeking classified information which the government sought to protect." 751 F.2d at 427. Consequently, the court held that the district court did not err in refusing discovery without convening a hearing under Section 6(a). It is apparent that *Pringle* dealt with a situation quite different from the issues raised in this appeal about the Section 6(a) hearing.

The majority opinion, for which there is no precedent, departs both from the procedure set out in the Act and from existing standards for determining the admissibility of evidence that the Congress intended to leave intact. Sadly, the departure is altogether needless. If a district court follows step by step the procedures established by the Act and adheres to the congressional admonition to apply existing standards for determining the admissibility of evidence, the government's interest in national security, which the district judge and all members of this court seek to protect, will be preserved. At the same time, the need of the defendant to present relevant evidence, which Congress recognized, will be addressed in the manner provided by the Act.

## II

Section 6(c)(2) of the Act directs the district court to hold a hearing on a motion by the government for an alternative procedure for disclosure of classified information. Until this appeal is resolved, the district court cannot conduct a hearing pursuant to this section. Nevertheless, without a motion and without a hearing, the majority has decreed that two alternatives sug-

gested by the government in its brief adequately serve the needs of the defendant.

Appellate pre-emption of the district judge's functions specified by Section 6(c)(2) is unauthorized by the Act, and it is prejudicial. It deprives the defendant of the hearing Congress intended him to have. As a predicate to one of its rulings, the majority misapprehends the reasons the defense seeks to introduce certain evidence and the basis for the district court's ruling. *See* App. 315, 326–27, 745, appellees brief 9–12; and appellees supplemental brief 7–8, which set forth the reasons the defense seeks to introduce the evidence and the rationale of the district court's decision admitting it. A hearing contemplated by Section 6(c)(2) would enable the district court to avoid such an error.

I respectfully dissent.