## UNITED STATES of America, Appellant,

v.

## Bernie E. ZETTL, Robert R. Carter, and Walter R. Edgington, Appellees.

### No. 86–5525.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 11, 1986.

Decided Dec. 17, 1987.

John F. De Pue, Dept. of Justice (William F. Pendergast; Carlin D. Stanley, Dept. of Justice; David H. Hopkins, Asst. U.S. Atty., Henry E. Hudson, U.S. Atty., on brief), for appellant.

Barry S. Simon (Brendan V. Sullivan, Jr., Paul Mogin, Jeffrey B. Kindler, Williams & Connolly, Richard A. Hibey, Anderson, Hibey, Nauheim & Blair, Marvin J. Garbis, Ronald B. Rubin, Melnicove, Kaufman, Weiner, Smouse & Garbis, on brief), for appellees.

Before WIDENER, PHILLIPS, and ERVIN, Circuit Judges.

WIDENER, Circuit Judge:

The United States appeals a pretrial order by the United States District Court for the Eastern District of Virginia authorizing the defendants Zettl, Edgington and Carter to disclose certain classified information during their criminal trial for conspiracy, conversion and espionage. The government is authorized under 18 U.S.C.App. IV § 7 to take this interlocutory appeal from the adverse ruling by the district court. We affirm the order of the district court with respect to relevancy and remand for further proceedings under the Classified Information Procedures Act, 18 U.S.C.App. IV § 1, et seq, (CIPA) and *United States v. Smith*, 780 F.2d 1102 (4th Cir.1985).

The defendants Bernie E. Zettl, Robert R. Carter and Walter R. Edgington were indicted in a multi-count indictment for conspiracy, conversion and espionage. Zettl is a paid consultant for GTE Government Systems Corporation. Carter is a former marketing manager for GTE's Western Division at Mountain View, California, and Edgington is GTE's Vice President for marketing in Rosslyn, Virginia. All three were indicted of conspiracy to convert classified Department of Defense (DoD) documents, particularly the 1984 Navy Program Element Descriptions (PEDs)[1] to their own use and to defraud the United States of the right to have its procurement process free from unauthorized conversion, in violation of 18 U.S.C. § 371. Zettl was charged with converting to his own use and the use of another without authority a United States document, the 1984 Navy PEDs, in viola-

tion of 18 U.S.C. § 641. Edgington was charged with receiving, concealing and retaining the 1984 Navy PEDs with the intent to convert them to his own use and gain, in violation of 18 U.S.C. §§ 641 and 2. Zettl and Edgington were also charged with violations of the Espionage Act, 18 U.S.C. § 793(e), as the result of Zettl's delivering the 1984 Navy PEDs to a person not authorized to receive them and Edgington's unauthorized acceptance and retention of that document.[2] Pursuant to § 10 of CIPA, 18 U.S.C.App. IV § 10,[3] the United States advised the defendants that it would rely upon seven program elements contained in the 1984 Navy PEDs to establish the national defense or classified information element of the espionage charge.[4]

It is the government's theory of prosecution that between 1978 and 1983 Carter and Edgington contracted on GTE's behalf with Zettl for the unauthorized procurement of proprietary and classified Department of Defense (DoD) documents.[5] Zettl would transmit the documents to GTE by secretive and unauthorized means. The documents were primarily budgetary information that would then be disseminated to some employees within GTE to be used in preparing bids and contracts to be submitted to the government. Through possession of these documents, GTE had access to DoD information about the kinds of electronic technology the government would be seeking through government contracts and the amount of money DoD would seek from Congress to carry on these various projects. GTE would thus

---

**1.** Other documents listed in the indictment include the Program Objective Memoranda (POMs) and the Five Year Defense Plan (FYDP). The 1984 Navy PEDs make up a 1220 page book. The government's brief tells us that the POMs and FYDPs are never released outside the Department of Defense.

**2.** Edgington did not receive the PEDs directly from Zettl.

**3.** 18 U.S.C.App. IV § 10 provides:

In any prosecution in which the United States must establish that material relates to the national defense or constitutes classified information, the United States shall notify the defendant, within the time before trial specified by the

court, of the portions of the material that it reasonably expects to rely upon to establish the national defense or classified information element of the offense.

**4.** Those program elements are:
24573N Navy Cover and Deception Program
24575N Electronic Warfare Support
31327N Technical Recons and Surveillance (not all)
63506N Surface Ship Torpedo Defense
63528N Non-acoustic Anti–Submarine Warfare (not all)
64761N Intelligence (engineering)
64675N MK–48

**5.** During this time, GTE was a contractor for the DoD for the production of electronic equipment.

have a competitive advantage in the bidding process for these defense department contracts because of its access to internal government budgetary figures.

Among the documents Zettl provided to GTE were the 1984 Navy PEDs, the final supporting document for the budget proposal submitted to Congress. The PEDs had been classified SECRET by the government, and the government claims that only portions of the book were available through proper procedures to those in the defense community possessing the appropriate government security clearance upon demonstration of a need to know the information.[6] It is the government's theory that Edgington[7] did not seek to obtain portions of the PEDs through proper government channels but instead received the entire 1984 PEDs through unauthorized means from Zettl. While all the defendants had the appropriate government security clearance,[8] none had the need to know[9] the contents of the entire PEDs.

The defense counters that all of the classified information upon which the indictment was based was readily available to cleared individuals at GTE through the appropriate government channels. The government has taken no steps to withhold this classified information from cleared persons in the defense community. The defendants already had the classified information plus much more specific information on the same subjects because GTE was actively involved in research and development in many of the programs described in the classified information set out in the indictment. GTE is a manufacturer of electronic warfare equipment and, through that role, it receives a great deal of classified information concerning the Navy's tactical warfare plans. Because the defendants were entitled to receive this classified information through formal government sources, it cannot be illegal for them to have received the same information from Zettl. Because the classified information was so readily available to the defense community generally, GTE could not have obtained an unfair competitive advantage by obtaining the information from Zettl.

As we have noted, following return of the indictment, the government notified the defendants that it planned to limit its proof on the espionage counts to seven program elements from the 1984 PEDs. The defense, pursuant to the requirements of CIPA, notified the government of its intention to introduce classified information into evidence as part of its defense.[10] 18 U.S.C.

---

**6.** Individual program elements from the PEDs were available at the Navy Acquisition Research and Development Information Center (NARD-IC) or at the Defense Technical Information Center (DTIC).

**7.** Carter was no longer with GTE at that time.

**8.** At the time in question, Zettl possessed a SECRET security clearance, and Carter and Edgington possessed TOP SECRET clearances.

**9.** The need to know is defined in the *Industrial Security Manual for Safe-Guarding Classified Information* (ISM) published by the DoD in 1985, para. 1.3bg, as "a determination made by the possessor of classified information that a prospective recipient, in the interest of national security, has a requirement for access to ..., knowledge of, or possession of the classified information in order to perform tasks or services essential to the fulfillment of a classified contract or program approved by a UA." (user agency)

**10.** Section 5 of CIPA provides in part:
(a) Notice by defendant.—If a defendant reasonably expects to disclose or to cause the dis-

closure of classified information in any manner in connection with any trial or pretrial proceeding involving the criminal prosecution of such defendant, the defendant shall, within the time specified by the court or, where no time is specified, within thirty days prior to trial, notify the attorney for the United States and the court in writing. Such notice shall include a brief description of the classified information. Whenever a defendant learns of additional classified information he reasonably expects to disclose at any such proceeding, he shall notify the attorney for the United States and the court in writing as soon as possible thereafter and shall include a brief description of the classified information. No defendant shall disclose any information known or believed to be classified in connection with a trial or pretrial proceeding until notice has been given under this subsection and until the United States has been afforded a reasonable opportunity to seek a determination pursuant to the procedure set forth in section 6 of this Act, and until the time for the United States to appeal such determination under section 7 has expired or any appeal under section 7 by the United States is decided.

App. IV § 5. The district court then held a series of closed hearings to consider the use, relevance or admissibility of the classified information the defense sought to introduce.[11] 18 U.S.C.App. IV § 6(a). At these hearings, the United States objected to the introduction of all the classified information proffered by the defense except the 1984 Navy PEDs which the government announced it planned to introduce in their entirety. The 1984 Navy PEDs represent a substantial amount of classified information which the government planned to introduce at trial. It contains 1220 pages of information, approximately 300 of which are classified. Acting upon the assumption that such a large amount of classified information would be introduced by the government, the district court began considering the relevance of the hundreds of classified documents identified by the defense. For several days, the district court considered the relevance of defendants' identified classified documents, ruling some 192, or parts thereof, relevant at tri-

al. The exact number may vary due to changes in classification, withdrawal by defendants, duplications, etc.

Throughout the § 6(a) proceedings, the government took the position that it was improper for the court to consider at that time any applicable common law privileges that the government might wish to assert. Misconstruing this court's opinion in *United States v. Smith*, 780 F.2d 1102 (4th Cir.1985), the United States argued that the court's only role at the § 6(a) hearing was to rule upon the relevancy of the classified information. Because of the government's failure to assert any privilege at the § 6(a) hearing, the district court viewed the defense evidence solely from a relevancy standpoint, and, if relevant, held the evidence to be tentatively admissible.[12]

Following the district court's holdings that the classified information was admissible, the United States moved under § 6(c) of CIPA[13] that, in lieu of disclosure of the

---

**11.** Section 6 of CIPA provides in part:
(a) Motion for hearing.—Within the time specified by the court for the filing of a motion under this section, the United States may request the court to conduct a hearing to make all determinations concerning the use, relevance, or admissibility of classified information that would otherwise be made during the trial or pretrial proceeding. Upon such a request, the court shall conduct such a hearing. Any hearing held pursuant to this subsection (or any portion of such hearing specified in the request of the Attorney General) shall be held in camera if the Attorney General certifies to the court in such petition that a public proceeding may result in the disclosure of classified information. As to each item of classified information, the court shall set forth in writing the basis for its determination. Where the United States' motion under this subsection is filed prior to the trial or pretrial proceeding, the court shall rule prior to the commencement of the relevant proceeding.
(b) Notice.—(1) Before any hearing is conducted pursuant to a request by the United States under subsection (a), the United States shall provide the defendant with notice of the classified information that is at issue. Such notice shall identify the specific classified information at issue whenever that information previously has been made available to the defendant by the United States. When the United States has not previously made the information available to the defendant in connection with the case, the information may be described by generic category, in such form as the court may

approve, rather than by identification of the specific information of concern to the United States.
(2) Whenever the United States requests a hearing under subsection (a) of this section, the court, upon request of the defendant, may order the United States to provide the defendant, prior to trial, such details as to the portion of the indictment or information at issue in the hearing as are needed to give the defendant fair notice to prepare for the hearing.

**12.** The district court did recite in its final order that it considered the admissibility of the evidence in light of *Smith*. But, in that same order, it stated that its rulings made at the § 6(a) hearing had been tentative and subject to reconsideration in the light of *Smith* and the privileges which the government had not asserted. A fair reading of the record shows that the court's rulings at the § 6(a) hearing were tentative.

**13.** Section 6(c) of CIPA provides:
(c) Alternative procedure for disclosure of classified information.—(1) Upon any determination by the court authorizing the disclosure of specific classified information under the procedures established by this section, the United States may move that, in lieu of the disclosure of such specific classified information, the court order—
(A) the substitution for such classified information of a statement admitting relevant facts that the specific classified information would tend to prove; or

classified information, the court order the substitution of a statement admitting relevant facts that the classified information would tend to prove. See 18 U.S.C.App. IV § 6(c)(1)(A). The government submitted three proposed substitutions to the court, and the defense submitted one. After hearings on these proposals, the district court rejected all of the government's proposals on the ground that they failed to admit facts that the defense evidence would tend to prove. The defense proposal would have stipulated the government out of court for most practical purposes. The government adhered to its position that the *Smith* balancing test should be applied at the 6(c) substitution hearings instead of at the 6(a) relevancy and admissibility hearing.

At the 6(c) substitution hearing, the district court also ruled upon the government's request for what the court called the silent witness rule to be used at trial for the handling of classified documents. Under such a rule, the witness would not disclose the information from the classified document in open court. Instead, the witness would have a copy of the classified document before him. The court, counsel and the jury would also have copies of the classified document. The witness would refer to specific places in the document in response to questioning. The jury would then refer to the particular part of the document as the witness answered. By this method, the classified information would not be made public at trial but the defense would be able to present that classified information to the jury. The defense indicated that it probably would not object to handling the classified documents under the silent witness rule except for the 1984 Navy PEDs. The district court then said it would allow the case to proceed under such a rule as to all evidence except the 1984 PEDs. The court ordered that admission of that document would be in open court.[14]

The centerpiece of this case is the book of 1984 Navy PEDs, and it is due almost wholly to that document and its treatment by the district court that the questions arising in this appeal have taken place.

From the outset of the case, the government has been ambivalent as to whether or not it would introduce the 1984 Navy PEDs into evidence. Its position as stated in its brief on appeal, and adhered to in oral argument, is as follows:

> The government should therefore possess the latitude to elect to introduce the 1984 Navy PEDs in its entirety, to introduce only the portion that relates to the seven program elements at issue, or to attempt to prove its case without introducing the document at all and risk suffering a directed verdict and acquittal if the remaining evidence proves to be insufficient. p. 42

The United States Attorney told the district court unequivocally that the government intended to introduce the 1984 Navy PEDs as an exhibit for the jury to consider. The district court, doubtless with this in mind, ruled that any information in the

(B) the substitution for such classified information of a summary of the specific classified information.
The court shall grant such a motion of the United States if it finds that the statement or summary will provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information. The court shall hold a hearing on any motion under this section. Any such hearing shall be held in camera at the request of the Attorney General.
(2) The United States may, in connection with a motion under paragraph (1), submit to the court an affidavit of the Attorney General certifying that disclosure of classified information would cause identifiable damage to the national security of the United States and explaining the basis for the classification of such information. If so requested by the United States, the court shall examine such affidavit in camera and ex parte.

14. The government construes the district court's direction to mean that it was ordering the United States to offer the document into evidence without qualification and in all events; we do not. We think that, read in context, the direction of the district court was a thinly veiled warning that the government might suffer adverse consequences if the document were not offered into evidence. The government, not the court, is the final authority on whether it will offer a classified document into evidence. The court, not the government, then decides the consequences of any failure to offer such evidence.

PEDs upon which the government intended to rely to convict the defendants would be subject to explanation, that is to say, the defendants would be entitled to show that they had come into possession of certain parts or all of the book with authority or with a need to know. It apparently was the position of the district court that, if the individual defendants were authorized to possess certain parts or all of the book in their line of duty for GTE, the reason they possessed the same was a matter of fact, that is to say, whether they possessed the same to use in the ordinary performance of their duties, or whether they possessed the same for use to obtain an unfair competitive bidding advantage, which was the charge in count 1 of the indictment. A similar question of intent appears in counts 2 and 3 of the indictment in which Zettl and Edgington are charged with converting the 1984 Navy PEDs.

Faced with the government's ambivalence on what it intended to prove from that book, how much thereof it intended to introduce into evidence, and its refusal to be pinned down as to a theory of the case with respect to the classified documents and testimony, the district court was bound to assume, as it did, that the entire book would be offered into evidence. This was compounded by matching wariness on the part of the defense which, for example, from time to time asked the court to rule on the relevance of documents upon an ex parte explanation of the context in which they were to be offered.

Time and again during the CIPA proceedings, the government took the position that the district court should only consider relevancy in its hearings under § 6(a), 18 U.S.C.App. IV § 6(a). It took the position that any claim of more restricted admissibility than the ordinary rules of relevancy would indicate, see *Smith*, p. 1110, should not be made in the § 6(a) proceeding but should await proceedings under § 6(c) when the government would propose its substitution to be considered by the jury in lieu of the documents themselves, and this despite the fact that the district court indicated again and again that it thought the entire question of admissibility should be considered in the § 6(a) proceedings in accordance with *Smith*. The district court finally acquiesced in the government's position and explicitly stated in its order that it had indicated that its initial rulings on relevancy and admissibility were tentative based on its belief that the government would present or proffer evidence showing that the public disclosure of a particular item of classified information would create an identifiable danger to the national security and require an evaluation of its previous rulings on relevance and admissibility in accordance with *Smith*. At that time, the order stated, the court was going to examine the issue of cumulativeness, see *Smith* p. 1110, as well as all other issues pertaining to a final determination of a document's admissibility at trial. But, it added that it never addressed these questions because the government did not present any evidence of such an identifiable danger. While the language of the court was that of the statute, it obviously was referring to the rule of *United States v. Reynolds*, 345 U.S. 1, 7-8, 73 S.Ct. 528, 532, 97 L.Ed. 727 (1953), in which the Court stated that a claim of privilege for a state secret be lodged by the head of the department which has control of the matter after personal consideration of that officer.

█ The government raises three principal issues on appeal. First, that the district court's rulings on relevancy were flawed by the failure of the defendants to file a proper notice under § 5(a) of CIPA; second, that the court should have considered the claim of privilege on account of state secrets and that of the informer, apparently by virtue of the mere classification of the documents, although there was no indication in the record that the head of the department concerned had made and considered such a claim; and, third, that the government's motion for substitution under § 6(c) should have been accepted by the district court.

The district court found the notice given by the defendants under § 5 to be sufficient. In that notice, they had listed several hundred documents which they intended to introduce and which they contended they

would connect with the duties of the defendants in this case, not merely to GTE. The documents, the district court held, were all relevant to the defense of the case. The bulk of its rulings were for the reasons that they explained the defendants' side of the government's theories of prosecution, or because they were the documents themselves which were contained in the PEDs, or because they contained the same information that was contained in the various papers making up the PEDs. While the government's principal claim on appeal derived from its § 5 objection is that the district court did not sift through each of the possibly thousands of items of classified information contained in the classified documents the defendants gave notice that they sought to introduce, nowhere in its brief or on oral argument does the government discuss any document in precise detail as an example of what it now calls this glaring deficiency. Even more importantly, the government does not so point out with particularity the parts of any of the documents which were irrelevant but merely complains that the district court was prone to admit irrelevant evidence. A reading of the transcript, however, reveals that there is little basis for the government's objection. While the § 5 notice was certainly broad enough, as the government acknowledges, in that it merely listed the documents the defendants proposed to introduce, as opposed to parts thereof, and could easily have been more precise, the district court patiently considered item by item each objection made by the government during the days of § 6(a) hearings. In view of the dozens or hundreds of rulings of the district court on relevancy,

many of which, we may add, were favorable to the government, it does seem that one discrete example of error could have been provided in the government's brief on appeal. Such generalization will not do, as is apparent.[15] From the government's position in its brief as to the admission of irrelevant evidence, we think the truth is that there were no rulings of the district court as to relevancy worthy of appeal, and we so find.[16] The real point, while argued in the terms of relevancy of evidence, is that the defendants' § 5 notice was too imprecise. While that may be true, it was sufficiently broad for the government to have been given fair notice of what the defendants proposed to introduce at trial, and while it might have been couched in more precise terms in the sense of seeking to introduce a part of a document rather the document as a whole, any such error has been corrected by the detailed manner in which the district court conducted the § 6(a) hearings, taking into account on numerous occasions the government's objections to part of a document. So, if there were any error on that account, it is harmless.

▉ The next point the government makes on appeal is that it has been deprived of its right to claim privilege under *Reynolds* and *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), and like cases, including the *Smith* case in this circuit. The privilege which the government now seeks to assert is that of the kindred privileges of state secret and the informer. As we have mentioned before, despite the explicit holding in *Smith*, pp. 1109–1110, that the exercise of the privi-

---

15. The tone of the government's brief is probably best explained by this passage from it:
"... particularly when considered from the perspective of the standard of relevance applied in *Smith, it is beyond question that none of the specific classified information at issue is relevant to appellees' defense.* As explained earlier, common to all of the appellees' proffered defenses, the purpose of seeking to introduce the classified information at issue is to demonstrate that the same information as that contained in the 1984 Navy PEDs and the other documents the defendants were charged with transmitting or receiving without authority was already available to cleared GTE employees and other potential government contractors with a need to know." p. 34 (Italics added)

16. No great issue is made on appeal of the summaries of oral testimony approved by the district court. The rulings of the district court as to relevancy with respect to that matter are also affirmed.

We keep in mind that, while the summaries submitted were in general terms, the district court held that it would not permit any greater or more specific disclosure at trial than the summaries indicated.

lege is not confined to the substitution procedure under § 6(c) as Smith had argued in that case, rather that it should be considered at the § 6(a) hearing, the government took the position in the district court that its claims of privilege should come only after the conclusion of the § 6(a) proceedings. In this position, the district court finally acquiesced. Thus, the government now wishes to claim its privilege of state secret and the informer which is quite contrary to the position it took in the district court. If this were an ordinary case, we would leave the government in the position in which it has maneuvered itself. But this is not the ordinary case; it is not the prosecution of some common criminal. The issues here are large and are those which should be addressed by the district court in the first instance. A claim of the government is that no one at GTE had the right to possession of the 1984 Navy PEDs book as a whole. The government admits, or apparently will do so, that some people at GTE were authorized to have in their possession each part of the 1984 Navy PEDs, but that no one at GTE was authorized to have in his possession the entire book. In this respect, the government will attempt to prove that Zettl, Carter and Edgington obtained the book by secretive, surreptitious means and not through any regular channels. The government will further attempt to prove that possession of the book as a whole enabled GTE to have a competitive advantage in bidding on government contracts. The defendants, on the other hand, will attempt to prove that they were authorized to possess or had the need to know all the information in the book. Thus, so far as the conspiracy and conversion counts go, a question of fact will be left as to whether or not the possession of the book, which we take it will be tacitly admitted by the defendants, was for use in their ordinary duties at GTE, a perfectly proper purpose, or whether its possession related to obtaining an unfair bidding advantage, or other equally improper purpose.

In this respect, we are now advised that the Navy has advised the Attorney General that it had rather forego this prosecution than have the entire 1984 Navy PEDs made public; yet, despite this, the government has made no offer to confine its proof to anything less than the entire book. In view of the seriousness with which the Navy views the release of the classified information in the 1984 PEDs, we think the government should have the chance to assert any privilege it may have which it generally describes in its brief as an assertion of state secrets and that of the informer, to include military secrets. For the reason that the national security is involved and that the government simply misconstrued our *Smith* decision, we remand this case to the district court to give the government an opportunity to assert its claim of privilege and to have the district court rule thereupon as it wanted to do from the outset.

On remand, the record has been made up as to the classified documents and classified testimony sought to be introduced by the defendants. That will give the government a studied opportunity to move for the excision of any "unnecessary" or otherwise legally superfluous part of any of the documents or testimony under § 8(b) of the statute. And, this should be done before a claim of privilege is asserted. Any classified information that the district court might excise from any of the documents or testimony could not have an effect on the claim of privilege except to make it more narrow. After the district court has ruled on the excision of the documents and testimony, the government will then be permitted to assert its claim of privilege under *Smith.* After the district court has ruled on the claim of privilege, as well as matters of whether the evidence is merely cumulative or corroborative, etc., see *Smith* p. 1110, then the government should file its motion for substitution under § 6(c) of the statute if it be so advised, and the district court will then consider that motion.

We are of opinion the procedure we have just outlined is that contemplated by the statute, for, until the government knows exactly what classified information the district court proposes to admit, and after the district court has ruled on the claims of

privilege and made its excision from documents and proffered testimony, it might be nearly impossible, and certainly is quite impractical, for the government to prepare properly a substitution motion.

Although the question is not now before us, by holding that the state secret and informer's privilege should be asserted in the § 6(a) hearings, we do not mean to imply that similar considerations should not be present in the court's consideration of substitution motions under § 6(c). That such is clearly the case is shown by § 6(c)(2) providing for the filing of an affidavit of the Attorney General in § 6(c) proceedings, which affidavit explains the basis for the classification of the information sought to be disclosed and that the disclosure would cause identifiable damage to the national security of the United States.[17]

In view of our decision as above set forth, it is unnecessary for us to pass upon the validity of the government's motion for substitution under § 6(c) of the statute.

AFFIRMED AND REMANDED WITH INSTRUCTIONS.

---

**17.** An affidavit of the Attorney General as well as declarations of the Secretary of the Navy and the Deputy Director of the National Security Agency were filed by the government in connection with a motion for the court to reconsider its § 6(c) substitution rulings. While we have had no occasion to consider the contents of those papers and they may or may not be sufficient to support the *Reynolds* rule above referred to, p. 15, and the § 6(c)(2) affidavit, the government may file any such additional papers if it be so advised.