**UNITED STATES of America**

v.

**Michael Lynn SMITH.**

**No. 3–88–00147.**

United States District Court,
M.D. Tennessee,
Nashville Division.

Feb. 17, 1989.

---

N. Reese Bagwell, Bagwell, Bagwell, Parker, Riggins & Kennedy, Clarksville, Tenn., and Thomas Buchanan, Washington, D.C., for Michael Lynn Smith.

Michael C. Olmsted, Trial Atty., U.S. Dept. of Justice, Washington, D.C., for the U.S.

## AMENDED ORDER

WISEMAN, Chief Judge.

The United States moves for reconsideration of the Protective Order issued by this Court on January 10, 1989. *See United States v. Michael Lynn Smith*, No. 3–88–00147 (Jan. 10, 1989) (protective order). Paragraph Six of this Order designates certain court staff who will have access to classified information regarding the trial of Michael Lynn Smith without first obtaining security clearances from the Department of Justice. The United States asserts that this provision violates § 4 of the security procedures established pursuant to § 9 of the Classified Information Procedures Act ("CIPA"), 18 U.S.C.App. IV (1985). This Court holds that § 4 of the security procedures itself violates the Constitution by subjecting the judiciary to undue interference by the executive branch.

CIPA establishes guidelines for handling classified information that comes into the custody of federal courts during criminal trials or appeals. Section 9 requires the Chief Justice of the United States, in consultation with the Attorney General, the Director of Central Intelligence, and the Secretary of Defense, to prescribe procedures for avoiding unauthorized disclosure of classified information. Section 4 of these procedures provides in part:

> No person appointed by the court or designated for service therein shall be given access to any classified information in the custody of the court, unless such person has received a security clearance as provided herein and unless access to such information is necessary for the performance of an official function.

Section 4 violates judicial independence and the separation of powers. It gives the executive branch veto power over a federal judge's choice of court personnel. The executive unilaterally conducts the investigations, establishes the clearance standards, and determines who meets or does not meet those standards.

This interferes with the very core of the judicial process. A "court" is more than a judge; it is a tightly integrated unit composed of the judge and those he carefully selects to assist him in fulfilling his duties. The court staff subjected to executive scrutiny through § 4 are in a very real sense an extension of the judge himself. The CIPA procedures thus invite executive officials into a court's chambers and authorize them to dictate to federal judges the manner in which they conduct their business.

An independent judiciary is a cornerstone of our republic. Those who first shed their blood for this country listed as one of their grievances against the English monarch that "[h]e has made Judges dependent on

his Will alone, for the tenure of their offices, and the amount and payment of their salaries." The Declaration of Independence para. 11 (U.S. 1776). This grievance found satisfaction in the Constitution, which grants federal judges life tenure and salary protection and "commands that the independence of the Judiciary be jealously guarded...." *Northern Pipeline Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 60, 102 S.Ct. 2858, 2866, 73 L.Ed.2d 598 (1982).

Our Founders recognized that "[t]he complete independence of the courts of justice is peculiarly essential in a limited Constitution." The Federalist No. 78, at 466 (A. Hamilton) (Menton ed. 1961). They also realized that the integrity of "the weakest" branch requires especially vigilant protection. *See id.* at 465–66 (The judiciary "can never attack with success either of the other two [branches]; and ... all possible care is requisite to enable it to defend itself against their attacks."). "[L]iberty can have nothing to fear from the judiciary alone, but would have everything to fear from its union with either of the other departments." *Id.* at 466. *See also* The Federalist No. 48, at 308 (J. Madison) (Mentor ed. 1961) ("It is agreed on all sides that the powers properly belonging to one of the departments ought not to be directly and completely administered by either of the other departments. It is equally evident that none of them ought to possess, directly or indirectly, an overruling influence over the others in the administration of their respective powers."). Section 4 of the CIPA procedures violates these fundamental principles.

The insidious evil envisioned by § 4 is its effect on the impartiality of the Court and the public perception and appearance of impartiality. If the Justice Department can investigate the tax returns and personal lives of anyone in the Court's employ, there is the potential for intimidation and unjustified favorable treatment. Even if this potential does not exist, the appearance of its possibility undermines public confidence in absolute impartiality. When the Department of Justice through a United States Attorney appears in this Court in a criminal case, it is as a *litigant*—nothing

more, nothing less. The United States Attorney is entitled to no more consideration or deference than the defense attorney. Any other attitude emasculates the presumption of innocence. Allowing the Department of Justice *any* voice in selection of court personnel dealing with a case in which it is a party offends the most elementary notions of fair play and impartial justice.

The United States relies upon an unpublished decision of the Fourth Circuit Court of Appeals. *See In re United States Department of Justice,* No. 87–1205 (4th Cir. Apr. 7, 1988). The court in that case issued a writ of mandamus requiring the court below to delay the production of classified information in a civil case until all members of the courtroom staff having access to the information obtained security clearances. "The central question properly before us is whether the national interest in preventing unauthorized disclosure of classified material demands reasonable deference from all branches of the government. We are persuaded it does." *Slip op.* at 3.

The Fourth Circuit's view of "reasonable deference" is dangerous precedent. This Court agrees that this government "has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality...." *Snepp v. United States,* 444 U.S. 507, 509 n. 3, 100 S.Ct. 763, 765 n. 3, 62 L.Ed.2d 704 (1980). But the judiciary is a coequal branch of this government. Due deference for national security does not require that the judiciary tolerate incursions into its legitimate and constitutionally established functions and prerogatives.

This Court resents the implicit assertion that it is unable or unwilling to protect our country from harmful disclosures without abdicating authority to the executive. The judiciary is concerned with national security no less than the other branches. Federal judges in fact sacrifice much more lucrative work to serve their country. And they are competent to take measures to protect against harmful disclosures of classified information.

This Court in fact *has* deferred to national security interests by subjecting itself and the parties to the directives contained in the Protective Order. But it has deferred on its own terms, not on those dictated to it by the executive.

This Court has reconsidered the Protective Order at issue. The Order shall not be amended.[1] This Court will not tolerate the blatant incursion on the judicial decision-making process requested by the Justice Department. The independence of this Court will not be compromised.

See also, 840 F.2d 421.

---

1. The United States also suggests that this Court require defense personnel to obtain security clearances. Section 5 of the CIPA procedures governs persons associated with the defense. This Court finds no authority in that section for requiring submission to a security clearance as a prerequisite to representation of a defendant in a case involving classified information. *Accord United States v. Jolliff*, 548 F.Supp. 232, 233 (D.Md.1981). This Court questions whether such a requirement, if it existed, would violate defendant's sixth amendment right to counsel.