833 F.Supp. 752 (1993)
UNITED STATES of America, Plaintiff,
v.
Tawfiq MUSA, Zein Isa, Saif Nijmeh, and Luie Nijmeh, Defendants.
No. 4:93CR89 DJS (CDP).
United States District Court, E.D. Missouri, E.D.
September 24, 1993.
*753 Tom Day, St. Louis, MO, for Zein Isa.
Neil J. Bruntrager, Bruntrager & Billings, St. Louis, MO, for Luie Nijmeh.
Keith G. Liberman, St. Louis, MO, for Saif Nijmeh.
Linda Murphy, Clayton, MO, for Tawfiq Musa.
James Steitz, Asst. U.S. Atty., St. Louis, MO, for U.S.

MEMORANDUM OPINION
PERRY, United States Magistrate Judge.
This matter is before the undersigned on the government's motion for a protective order to protect the dissemination of classified information that will be provided to the defendants in discovery in this case. All pretrial motions in this case were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).
The government has already produced to the defendants approximately 250 tape recorded conversations, which have been declassified and which constitute the bulk of the information that the government intends to introduce in its case in chief. It intends to produce tapes of approximately 100 additional declassified conversations. However, the government has indicated that much of the remaining discoverable material required to be turned over to defendants in this case constitutes "classified national security information," that is, documents or audio tapes that have been classified by an executive agency of the United States government as "confidential", "secret", "top secret", or "sensitive compartmented information." In fact, the government has indicated that most of the discovery materials to be turned over in this case are classified as "secret". The government has agreed to produce approximately 7,000 reels of audio tapes of conversations, most in languages other than English, and the government logs of those telephone conversations, which are in English, as part of discovery.[1] These documents and tapes must be produced to the defendants in a format that will allow counsel to review them, to seek assistance from interpreters and others such as expert witnesses, where appropriate, and to allow defendants themselves to review the materials, all in preparation for trial. Because the documents and tapes are classified, however, procedures must be established pursuant to the Classified Information Procedures Act ("CIPA"), 18 U.S.C.App. *754 III, to restrict the dissemination of these materials.
All four defendants in this case have been detained pending trial (one, Zein Isa, is currently under sentence of death from Missouri state courts). Thus, in addition to the issues regarding dissemination of classified materials, the Court must consider methods for allowing defendants themselves to review this material and discuss the same with their attorneys, in a secure yet confidential environment.

I. Objections to Any Protective Order

Some defendants have filed objections to any protective order being entered in this case, and have argued that the restrictions set forth in the CIPA violate their rights to due process, a fair and public trial, and to effective assistance of counsel of their choosing, as protected by the Fifth, Sixth and Eighth Amendments to the United States Constitution. These objections are easily rejected.
Congress enacted CIPA to combat "greymail", that is, the situation where a defendant's threat to or right to reveal classified information during a public trial might thwart the government's ability to proceed with a criminal prosecution. CIPA sets up a procedural mechanism to deal with the competing needs of criminal defendants to introduce classified information in evidence at trial and the government's need to protect such materials from unnecessary disclosure. The major thrust of the legislation is to provide a framework for pretrial determination of the admissibility of classified information at a defendant's behest.[2] Section 3, however, authorizes the court to issue a protective order protecting any classified information from unnecessary dissemination during the discovery process, and that is the section at issue here.
Although there are very few cases discussing the terms of a protective order under section 3, and the undersigned has located none dealing specifically with the constitutionality of section 3, other provisions of CIPA have withstood constitutional challenges. See e.g., United States v. Yunis, 924 F.2d 1086, 1094-94 (D.C.Cir.1991) (affirming district court denial of motion to dismiss on claim that CIPA discovery provisions infringed on defendant's fifth and sixth amendment rights); United States v. Wilson, 750 F.2d 7, 9 (2nd Cir.1984) (section 5 notice requirements are constitutional), cert. denied, 479 U.S. 839, 107 S.Ct. 143, 93 L.Ed.2d 85 (1986); United States v. Wilson, 721 F.2d 967, 976 (4th Cir.1983) (CIPA provisions did not infringe on defendant's confrontation rights or privilege against self incrimination); United States v. Porter, 701 F.2d 1158 (6th Cir.) (no denial of right to fair trial where defendants not allowed to examine classified surveillance equipment on airplane), cert. denied, 464 U.S. 1007, 104 S.Ct. 524, 78 L.Ed.2d 708 (1983); United States v. Jolliff, 548 F.Supp. 229 (D.Md.1981) (upholding constitutionality of Sections 1, 2, 4, 5, and 6 of CIPA).
Here the defendants have simply argued that any restrictions on their use and dissemination of the materials produced to them in discovery is unconstitutional. They have provided no basis for this argument. Rule 16(d), Fed.R.Crim.P., gives the Court broad discretion to regulate discovery in criminal cases. In this case the defendants are being provided with these tapes and logs, and the government is not attempting to avoid producing any of these materials by reason of their classification status. The CIPA protective order provisions do not restrict defendants' fifth or sixth amendment rights, and the right to a public trial is not infringed by the protective order sought here, which simply prohibits unnecessary disclosure of classified information provided to defendants in discovery. A later determination will be made, if necessary, regarding the use of classified information at trial. Defendants' general objections to the issuance of a protective order will be overruled.
*755 Defendants have also argued generally that the interests of national security do not require the information involved in this case to be classified at all, as it largely consists of telephone conversations among the defendants themselves and others. The determination whether to designate information as classified is a matter committed to the executive branch. See, e.g., United States v. Smith, 750 F.2d 1215, 1217-18 (4th Cir.1984), rev'd on other grounds on reh'g, 780 F.2d 1102 (4th Cir.1985) (en banc); United States v. Collins, 720 F.2d 1195, 1198 n. 2 (11th Cir.1983). This Court will not consider whether the government may have unnecessarily designated matters as classified which, in reality, do not affect the national security.
The government has, in any event, indicated its intention to declassify the approximately 350 conversations that it intends to introduce in evidence in its case in chief at trial. The government has already produced tapes and transcripts of 250 of these conversations to defense counsel for their examination. This information, of course, is completely outside the protective order, and there are no restrictions on defendants' use of or dissemination of it.

II. Terms of the Protective Order

Each defendant has filed objections to the government's proposed protective order, and each has filed his own proposed protective order. The court has heard the arguments of the parties, both orally and by reviewing their briefs. In general the debates concern the need for defense team members to obtain security clearances, objections to the impartiality of the Court Security Officer, and the regulation of the time, place, and manner for disclosure. Certain provisions of the protective order are not greatly disputed, such as the procedures to be followed when a defendant desires to place confidential information into a pleading to be filed of record.

A. Security Clearances

The main area of dispute with regard to the Protective Order concerns the need for security clearances for members of the defense teams. Counsel have objected to being required to obtain security clearances. Although there were initial indications to the contrary, the government has now made it clear that it is not requesting that defense counsel themselves be required to obtain security clearances. Therefore, there is no dispute regarding counsel, and they will not be required to obtain clearances. Obviously, defendants must be given access to all information provided, and they, obviously, will not obtain security clearances. Defendants and their counsel will be required to sign a Memorandum of Understanding indicating that they will comply with the terms of the Protective Order.
The contested issue regarding security clearances is therefore whether persons working for or assisting defense counsel, such as paralegals, secretaries, translators, expert witnesses and other defense witnesses, must have security clearances before being given access to classified information. The government urges that such persons must have clearances and that it should have an opportunity to be heard with respect to such persons. Defendants have argued that these persons should simply be allowed access, after being required to sign a Memorandum of Understanding reflecting that they have read the protective order and agree to its terms. They also argue that the Court does not have the authority to order such persons to undergo security clearances, and that to do so violates their rights under the sixth amendment.
In the opinion of the Court, simply requiring the signature on a Memorandum of Understanding of unknown persons who may be assisting defendants in their defense is not sufficient to protect classified information. Unlike counsel, who come within the inherent supervisory authority of the Court, expert witnesses, secretaries, and translators who may be hired by counsel have not been licensed by this Court and the State of Missouri, and are not necessarily bound by the same ethical considerations that bind counsel. The Court has no doubt that the counsel involved in this case take their duties as counsel very seriously and would instruct any persons associated with them regarding these issues. This, however, is not sufficient protection for the government's interest, recognized *756 explicitly by CIPA, to protect its classified information.
Paragraph 5 of the Security Procedures Established by the Chief Justice for the Protection of Classified Information provides as follows:
5. Persons Acting for the Defendant. The government may obtain information by any lawful means concerning the trustworthiness of persons associated with the defense and may bring such information to the attention of the Court for the Court's consideration in framing a protective order pursuant to Section 3 of the Act.
This provision gives the court the authority to regulate the access to classified information of persons assisting the defense. The Court, however, agrees with defendants that it is not appropriate to conduct adversarial proceedings inquiring into the trustworthiness of defense counsel's secretaries, paralegals, and expert witnesses. Such a proceeding would not only pose an undue burden on counsel and the Court, it would also unnecessarily delay the proceedings and lead to satellite litigation unrelated to the case at hand. It would also provide the potential for prosecutorial interference with the defendants' preparation of their defenses, or at least the appearance of the same, which should be avoided. Conducting such proceedings also appears pointless in light of the availability of the Court Security Officer to perform security clearances on these persons, and the ability of the CSO to do so confidentially and in a manner that avoids prosecution involvement in the process.
Persons assisting defense counsel will therefore be required to obtain Court approval before being given access to classified information, and that approval will only be granted after the individuals have received security clearances from the Court Security Officer in this case. The sixth amendment is not implicated by this requirement, as nothing in that amendment guarantees a defendant an unlimited right to the paralegals, secretaries, or translators of his own choosing. The government's request to be heard with regard to persons assisting the defendants will be denied, as the security clearance procedure and Court approval required here will adequately protect the government's interest in protecting classified information.
Defense counsel have also objected to requiring their staffs and witnesses to be cleared because the clearance process is controlled by the Department of Justice, and the Court Security Officer is a Department of Justice employee. The Court Security Officer, however, has been appointed by this Court and is therefore bound to the same ethical standards as other members of the court staff.[3]See United States v. Yunis, 867 F.2d 617, 621 (D.C.Cir.1989). By virtue of her appointment she is bound to assist this Court as it directs and to maintain the confidences entrusted to her by the Court. To that end the Court Security Officer will be specifically directed to conduct the security clearances in such a manner that no disclosures regarding those clearances will be made to the prosecution team of attorneys or law enforcement agents involved in any way in this case, either of the identity of any persons on whom such clearances are being requested, or of any information obtained regarding such individuals. All requests for clearances shall be made by defense counsel on an ex parte basis directly to the Court and the CSO, who shall have the clearances done and then inform the undersigned when such clearances have been obtained. At that time the Court will provide ex parte approval for the person to obtain access to classified information, once he or she has signed the Memorandum of Understanding and the same has been filed under seal. In the event that the CSO should determine that any person should not obtain a security clearance, the CSO will notify the undersigned and requesting defense counsel of the same and the reasons therefor. At that time the Court will conduct an ex parte hearing to determine whether the Court should approve the request *757 that the person obtain access to classified information. Only the CSO and defense counsel will be heard on this issue, and the prosecution will not be notified of the hearing or allowed to participate in it.

B. Place and Time of Production

The very practical dilemma faced by the Court is determining how the defendants and their counsel and counsel's assorted helpers can view and examine the extensive materials to be produced in an environment that meets the goals of limited dissemination set by CIPA, meets the security needs of the Marshals Service, given defendants' status as incarcerated persons, and provides a practical working environment where defense counsel may review the documents, prepare pleadings, and meet with their clients and discuss the items produced in discovery.
The Court, with the aid of the Court Security Officer, will provide for a secure room to be used for this purpose in the United States Court and Custom House. By using a room in the courthouse the Marshals Service may bring defendants here without added security risks, and all persons entering the building are required to pass through security screening areas. Some of the defendants have objected to use of the building, because the United States Attorney's office is in the same building, and counsel worry that their opponents could monitor their comings and goings. No other feasible alternatives exist, and the Court will not set up a system that would require the Marshals Service to transport defendants in custody to an outside, unsecure location.
Defense counsel and the CSO will control access to the room where the documents and tapes will be produced. The prosecution will have no access to the room. The locks will be changed by the Court Security Officer, who will provide keys to the defense counsel in this case. An alarm system will be installed, to be monitored by the Federal Protective Service, and the CSO and defense counsel will be the only persons with access to the alarm code. Defense counsel will be required to agree on the person among them who will be designated as the person to call if the alarm should be activated when no attorney is present.
The room is large enough for each counsel to have a computer and work space. The Court will provide basic furnishings including tables and chairs, and the Court Security Officer will provide computers for each defense counsel to use in this process. These computers, of course, will never leave the secure room and will return to the possession of the Court Security Officer at the conclusion of this case. No one other than defense counsel, however, will have access to the computers during the pendency of this case. Defense counsel will be required to provide their own equipment for listening to the tapes, and defense counsel must provide any staff needed to assist in the preparation of their cases.[4]
The protective order will, of course, provide that none of the materials placed in the room may be removed by any person, and none may be copied or otherwise duplicated. If counsel includes classified information in his or her notes, those notes must, of course, be left in the room. If the notes do not contain classified information they may be removed from the room.
Defense counsel have argued that they should be given access to the room at all times, and the undersigned agrees that this is reasonable, as certainly the prosecutors in this case are allowed to work at night and on weekends. For court security reasons, however, no persons other than defense counsel will be allowed to use the room at hours other than when the court house is normally open, that is, Monday through Friday, 8:00 a.m. to 5:00 p.m. When defense counsel wish to have their clients brought from their places of incarceration to the room they must notify the Marshals Service at least twenty-four hours in advance.
*758 Any disputes regarding the provisions of the protective order or the operation of the facility shall be promptly brought to the attention of the undersigned, who will modify the terms of the protective order if and when the same becomes appropriate.
The Protective Order is entered separately this date.

PROTECTIVE ORDER
This matter is before the Court on the government's motion for a Protective Order pursuant to § 3 of the Classified Information Procedures Act, 18 U.S.C.App. III. All pretrial motions in this case were referred to the undersigned under 28 U.S.C. § 636(b). The Court has considered the government's motion and declaration in support thereof and the defendants' opposition, and for the reasons set forth in more detail in the Memorandum Opinion issued this same date, finds and rules as follows:
1. The Court finds that this case will involve information that has been classified in the interest of national security. The storage, handling and control of this information will require special security precautions. The purpose of this Order is to establish procedures that must be followed by counsel and the parties in this case. These procedures will apply to all pretrial, trial, and post-trial matters concerning this case and may be modified from time to time by further order of the Court acting under its inherent supervisory authority to ensure a fair and expeditious trial.
2. This order is entered pursuant to the Classified Information Procedures Act (hereinafter CIPA), 18 U.S.C.App. III, 94 Stat. 2025, the Security Procedures Established Pursuant to CIPA by the Chief Justice of the United States for the Protection of Classified Information, Rules 16(d) and 57 of the Federal Rules of Criminal Procedure, the general supervisory authority of the Court, and in order to protect the national security.
3. As used herein, the term "classified national security information or documents" refers to any information or document which is disclosed to defense counsel or the defendants as part of the proceedings in this case, and which bears the designation "Confidential," "Secret," or "Top Secret," and has not been declassified by the government. The words "documents" or "information" as used in this Order include, but are not limited to, all written or printed matter of any kind, including the originals and all non-identical copies (whether different from the original by reason of any notation made on such copies or otherwise), all graphic, photographic, or oral records or representations of any kind, all electronic, computer, mechanical or electric records or representations of any kind, and all information acquired orally.
4. In accordance with the provisions of CIPA and the Security Procedures promulgated by the Chief Justice of the United States pursuant to that Act, this Court on May 14, 1993, designated Christine Gunning as Court Security Officer and Michael P. Macisso, James P. Londergan, Barbara J. Russell and Charles L. Alliman as alternate Court Security Officers for this case, for the purpose of providing security arrangements necessary to protect from unauthorized disclosure any classified information made available in connection with this case. Defense counsel shall seek guidance from the Court Security Officer with regard to appropriate storage and use of classified information.
5. This Order shall apply to the defendants and all defense counsel and any other person who may acquire or receive access to classified national security information or documents in connection with this case. Defense counsel and the defendants shall be given access to classified national security documents as necessary to prepare for proceedings in this case in accordance with the terms of the Protective Order. Neither defense counsel nor any defendant is required to submit to any security clearance procedure, but before any defendant or defense counsel is permitted access to classified national security information, he or she must sign the Memorandum of Understanding in the form attached hereto, agreeing to the terms of this Order, and the same shall be filed with the clerk of this Court.
6. If any defense counsel desires to have a person other than himself or herself or defendant obtain access to classified national *759 security documents and information, the following procedure shall apply:
(a) Defense counsel must make an ex parte application for the same to the Court, with a copy served on the Court Security Officer, providing the identity of the person and his or her relationship to the case and explaining the person's need to have access to classified information.
(b) The Court Security Officer will then perform a security clearance investigation on said person, and inform the Court and requesting counsel if the person will be granted a security clearance. The security clearances shall be performed by the Court Security Officer or her designee or designees in the Court Security Section of the Department of Justice, and shall be performed in such a manner as to assure that no members of the prosecution team of attorneys and government agents involved in this case will have access to either the identities of persons being screened or any information obtained during their background checks.
(c) If the Court Security Officer notifies the Court and counsel that the clearance has been approved, then the Court will enter an ex parte order granting such person access to the information only after said person has signed the Memorandum of Understanding in the form attached hereto agreeing to comply with the terms of this Order, and the same has been filed under seal with the Court and a copy provided to the Court Security Officer.
(d) If the Court Security Officer notifies the Court and counsel that the clearance has been denied, the Court will conduct an ex parte hearing to consider the reason for the denial and whether the Court should approve counsel's request that the subject person be provided access to the information. Only the Court Security Officer, the Court, and the requesting defense counsel will participate in such a hearing.
7. The Court Security Officer shall arrange for the creation, construction, maintenance and operation of a facility in which to provide defendants, defense counsel and other approved defense team individuals with access to classified national security documents. The Court Security Officer shall establish procedures to assure that the location is accessible to defendants, counsel for defendants, and approved employees or authorized witnesses accompanied by counsel during regular business hours. Defense counsel only shall have access to the facility twenty-four hours daily every day of the year, including weekends and holidays. All other persons, including defendants, may only be present in the facility during normal working hours, that is, between 8:00 a.m. and 5:00 p.m., Monday through Friday. The location shall contain working areas for counsel for each defendant and will be outfitted with any secure office equipment requested by the defendants that is reasonable and necessary to the preparation of their defense. The Court Security Officer, in consultation with counsel for defendants, shall establish procedures to assure that the location may be maintained and operated in the most efficient manner consistent with the protection of classified information.
8. No classified information will be removed from the secure facility, and no person who is given access to the classified information contained therein may disclose the same to any person not covered by this Order. Counsel shall be allowed to take notes and shall be provided the necessary facilities to permit them to prepare any written pleading they may wish to submit to the Court within the facility. With respect to any notes taken by defense counsel or persons assisting them during a review of classified information, counsel must, if the notes contain classified information, leave them at all times in the secure location. Any notes that do not contain classified information may be removed.
9. Classified national security documents and information contained therein and any information known by the defendants or counsel to be classified shall not be discussed in an area permitting persons not authorized to possess such information to overhear such disclosures. Said information shall not be discussed over any standard commercial telephone instruments or office intercommunication systems.
*760 10. Until further Order of this Court, all written pleadings relating to classified information, or those which might cause the disclosure of classified information, shall be submitted to the Court Security Officer. The time of physical submission to the Court Security Officer shall be considered the date of filing. The Court Security Officer shall promptly review such pleadings and, in consultation with the attorney for the Government or representative of the appropriate agency, determine whether they contain any classified national security information. If the pleading does not contain any such information, the Court Security Officer shall forward it immediately to the Clerk of the Court for routine filing. If the pleading does contain classified information or information which might lead to or cause the disclosure of classified information, the Court Security Officer shall:
a) ensure that it is marked with the appropriate classification stamp;
b) give a marked copy to the attorney for the Government; and
c) have it filed under seal and stored under appropriate security conditions.
11. Any unauthorized disclosure of classified information may constitute violations of United States criminal laws, including but not limited to, the provisions of Sections 793, 794, 798, and 952, Title 18, United States Code, and Section 783(b), Title 50, United States Code. In addition, any violation of the terms of this Order shall be immediately brought to the attention of the Court and may result in a charge of contempt of Court and possible reference for criminal prosecution, and may result in the termination of a party's access to classified information in this case. Persons subject to this Order are advised that direct or indirect unauthorized disclosure, retention or negligent handling of classified documents or information could cause serious damage, and in some cases exceptionally grave damage, to the national security of the United States or may be used to the advantage of a foreign nation against the interests of the United States.
12. All information to which counsel obtains access by this Order is now and will forever remain the property of the United States Government. Defense counsel shall return all materials that may have come into their possession or for which they are responsible because of such access, upon demand by the Court Security Officer. Defense counsel will have the option of destroying, in a manner authorized by the Court Security Officer, any work product that contains classified national security information or documents, rather than providing it to the Court Security Officer.
13. A copy of this Order shall issue forthwith to defense counsel named herein and each defense counsel is ordered to advise the defendant whom he or she represents of the contents of this Order and furnish him with a copy of it. The defendant and defense counsel shall each sign a copy of the Memorandum of Understanding attached to this Order, and file it with the Clerk of the Court. The signing and filing of this statement is a condition precedent to the disclosure of classified information to that defendant.
14. Nothing contained in this Order shall be construed as a waiver of any right of any defendant.
IT IS SO ORDERED.

MEMORANDUM OF UNDERSTANDING
1. Having familiarized myself with applicable espionage laws, I understand that I may be the recipient of information and documents that concern the present and future security of the United States and belong to the United States, and that such documents and information, together with the methods of collecting it, are classified according to security standards set by the United States Government.
2. I agree that I shall never divulge, publish, or reveal, either by word, conduct, or any other means, such classified documents and information unless specifically authorized in writing to do so by an authorized representative of the United States Government, as required by CIPA, as otherwise ordered by the Court, or as provided for in the Protective Order entered in the case of United States v. Tawfiq Musa, et al., Cause No. 4:93CR0089 DJS, Eastern District of Missouri.
*761 3. I understand that this agreement will remain binding upon me after the conclusion of the proceedings in United States v. Tawfiq Musa, et al., Cause No. 4:93CR0089 DJS, Eastern District of Missouri.
4. I have received, read and understand the Protective Order entered by the United States District Court for the Eastern District of Missouri on September 24, 1993, in the case of United States v. Tawfiq Musa, et al., Cause No. 4:93CR0089 DJS relating to classified information, and I agree to comply with the provisions thereof.
 _________
 Signature
 _________
 Date
____________________
 Witness
Sworn to and subscribed to before me.
____________________
NOTES
[1] In addition to these classified tape-recorded conversations and the logs of the same which the government is producing without objection, the government has indicated that it will seek a determination under CIPA and Rule 16 whether certain other information is required to be produced to defendants. The issues regarding this other information are not currently before the Court.
[2] In this case it is anticipated that after the defendants have been given a reasonable amount of time to review the classified information produced in discovery, they will be given a deadline for filing their notices under § 5 of CIPA indicating what, if any, classified information they intend to introduce at trial.
[3] The Court notes for the record that the Court has directed all court staff who will have access to classified information to first undergo security clearances. Cf. United States v. Smith, 706 F.Supp. 593 (M.D.Tenn.1989), rev'd on other grounds, 899 F.2d 564 (6th Cir.), cert. denied, 498 U.S. 994, 111 S.Ct. 544, 112 L.Ed.2d 553 (1990).
[4] Some defendants have argued that the CSO should provide staff, in lieu of requiring counsel's staff to undergo clearances. The Court will not require this, and, as set forth above, believes that requiring security clearances is reasonable. If it should later appear that, for example, the only cost-effective translators available to defendants are unable to obtain security clearances, the Court will consider alternative suggestions.